## Collins v. Northwestern National Insurance Group

*Louis B. Loughren*, for plaintiff.
*James F. Israel*, for defendant.

FINKELHOR, *J.*, March 16, 1977 — The above matter came before the court en banc on the preliminary objections of defendant, Northwestern National Insurance Group, to plaintiff's amended complaint. This case was previously heard by Ralph H. Smith, Jr. and Rolf Larsen, JJ., and plaintiff was permitted to file an amended complaint.[1] It is defendant's contention that plaintiff has still failed to state a valid cause of action.

The issue before the court is whether the Unfair Insurance Practices Act of July 22, 1974, P.L. 589, 40 P.S. §1171.1, created a private right of action by individuals, including third parties, against an insurance carrier engaging in a prohibited practice.

Plaintiff alleges that, on or about October 23, 1973, the agents, servants or employes of the Borough of Mars committed a tortious trespass on plaintiff's property and caused property damages and consequential loss of earnings to plaintiff. At the time of this occurrence, defendant, Northwestern, the public liability insurance carrier for the Borough, investigated plaintiff's claim, engaged in settlement negotiations, and offered plaintiff $500 in settlement of the claim. Plaintiff alleges that the total claim was in the amount of $3,710 and the $500 offer was refused.[2]

---

1. At the time of preliminary objections, it was questioned whether negotiations between plaintiff and defendant had occurred before or after the passage of the 1974 Act.

2. The pleadings do not state whether suit was filed against the Borough.

While the alleged tortious act by the Borough occurred in October, 1973, prior to the enactment of the Unfair Insurance Practices Act of 1974, the negotiations between plaintiff and defendant for settlement took place in May, 1975 after the passage of the legislation.

The Unfair Insurance Practices Act, enacted July, 1974, and repealing the Act of 1947, is a comprehensive statute similar to legislation adopted in other jurisdictions in accordance with the intent of Congress to foster state regulation of the insurance business. See 15 U.S.C.A. §1011, et seq., March 9, 1945, 59 Stat. §33, and 40 P.S. §1171.2.

Section 5 of the Pennsylvania Act, 40 P.S. §1171.5, provides a list of "unfair," or prohibited, activities by those engaging in the business of insurance and includes the following:

"(10)(iv)Refusing to pay claims without conducting a reasonable investigation based upon all available information.

" . . .

"(10)(vi) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which the company's liability under the policy has become reasonably clear.

"(10)(vii) Compelling persons to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts due and ultimately recovered in actions brought by such persons."

The Act further provides in section 13, 40 P.S. §1171.13, as follows:

"The powers vested in the Commissioner by this act are additional to any other powers to enforce any penalties, fines or forfeitures authorized by

law with respect to the methods, acts and practices declared to be unfair and deceptive."

It is plaintiff's position that the 1974 Act provides the basis for a private trespass action against insurance carriers who have engaged in acts prohibited by the legislation, and that the settlement negotiations of defendant on plaintiff's claim were not in good faith, and, therefore, in violation of section 5 of the Act.

The Insurance Practices Act, similar to other "consumer protection" legislation[3] vests in an administrative agency and officer both regulatory and enforcement powers. The act prohibits carriers from engaging in unfair methods of competition or unfair and deceptive trade practices, and includes approximately four pages of specifically prohibited activities.[4] Because of the Federal legislation, many other states have adopted statutes similar to the Pennsylvania Act.

The Insurance Commissioner is authorized to investigate insurance carriers and to conduct an administrative hearing if he has good cause to believe that the carrier is engaging in improper conduct. After hearing, the commissioner may impose an administrative penalty and if the alleged violator fails to comply with the order, the commissioner may file for an injunction in either the Commonwealth Court or the Common Pleas Court

---

3. See the Pennsylvania Unfair Trade Practices and Consumer Protection Law, December 17, 1968, P.L. 1224, 73 P.S. §201-1, which vests enforcement power in the Attorney General: Americans Be Independent v. Comm. of Pa., 14 Commonwealth Ct. 179, 321 A. 2d 721 (1974).

4. For a discussion of the Insurance Practices Act of 1974, see Very, The Pennsylvania Unfair Insurance Practices Act, Pennsylvania Bar Association Quarterly 438 (Oct. 1975).

in the appropriate judicial district. The act further provides for civil penalties for violation and judicial review of the administrative order. The act does not include a provision for a private party, allegedly wronged, to bring an action in the state courts for damages.

Despite the omission of specific statutory authorization for a private suit, it is plaintiff's further contention that section 13 of the act recognizes the cause of action of the private litigant.

Suits against insurance carriers are not a new phenomenon in Pennsylvania law. Where the carrier has acted in bad faith and has refused to adjust the loss of *the insured,* recovery, including damages flowing from the refusal to settle or negotiate, has been permitted: Gedeon v. State Farm Mutual Automobile Insurance Co., 410 Pa. 55, 188 A.2d 320 (1963); Ashbrook v. Kowalick, 332 F. Supp. 78 (E.D. Pa. 1971), aff'd 474 F.2d 1338 (3d Cir. 1973). In addition, the language of section 13 of the Act preserves *prior* causes of action: Dozor Agency v. Rosenberg, 403 Pa. 237, 169 A.2d 771 (1961).

In Dozor, supra, the defense of the exclusive jurisdiction of the Insurance Commissioner under the 1947 Act was dismissed, and the court stated as follows:

"We are of the opinion that the [Insurance] Act was never intended to and *does not vest exclusive* jurisdiction in the Insurance Commissioner in cases such as the present and thus oust the jurisdiction of a Court of Equity which for many years has possessed and exercised jurisdiction in cases arising out of facts on all fours with the instant case. . . .

"  . . .

"Section 10 [13] preserves all the procedures authorized by law and for this additional reason the Act did not destroy equitable jurisdiction in a case such as this." 403 Pa. at 242-243. (Emphasis in original.)

However, there is a substantial difference between the preservation of previously existing causes of action and the creation of new rights and liabilities. A review of case law developed under similar legislation in other states indicates a rejection of plaintiff's argument: Retail Clerks Welfare Fund v. Continental Casualty Co., 71 N.J. Super. 221, 176 A.2d 524 (1961); Seasongood v. K & K Insurance Agency, 414 F. Supp. 698 (E.D. Missouri 1976). See also Larwood v. National Casualty Co., No. 76-926 of 1977 (W.D. Pa. Civil Action). Federal consumer legislation has also limited the right of the private litigant to bring an independent action: Rauch v. United Instruments Inc., 45 L.W. 2333 (3d Cir. 1976); Rogers v. Exxon Research & Engineering Co., 45 L.W. 2366 (3d Cir. 1977).

The only exception to the exclusive jurisdiction of the administrative agency we have been able to find is Shernoff v. Superior Court of Los Angeles, 44 Cal. App. 3d 406, 118 Cal. Rptr. 680 (C.A. 2d D. 1975), wherein the court relied on certain rules of California procedure, not pertinent to Pennsylvania, and a section of the California Act (Insurance Code §790.09). This section, not within the Pennsylvania law, specifically preserved civil liability irrespective of governmental action against the violator: Greenberg v. Equitable Life Assurance Society, 34 Cal. App. 3d 994, 110 Cal. Rptr. 470 (C.A. 2d D. 1973).

The Western District Court has recently held,

without discussion, that the exclusive remedy, even for the insured, against the insurance carrier is by way of petition to the Insurance Commissioner with court review *after* administrative action: Larwood v. National Insurance Company, supra.

The instant proceeding is not a controversy between insured and insurer, where conceivably section 13 of the Act might preserve a cause of action, but the action of a third party who has no contractual relationship with the carrier. Plaintiff's right to sue must be found in the Insurance Practices statute itself.

Regulation of the business of insurance is to protect the general public and *the insured*. The Act of 1974 establishes enforcement by the governmental agency and does not include a statutory cause of action by private third parties. Plaintiff, a third party, retains his remedy against the alleged wrongdoer, the Borough, and under the 1974 legislation can file a complaint with the insurance commissioner against the carrier.

It is conceivable that such a private right of action should be authorized under the Act for the protection of third parties, as in the California legislation, but this is a matter for the legislature and not the courts. As the instant proceeding does not raise the rights of the insured, we are not ruling on this issue.

Based upon the above discussion, it is our conclusion that plaintiff has failed to state a cause of action and that the demurrer to the Amended Complaint must be sustained.

An appropriate order is attached hereto.

## ORDER

And now, March 16, 1977, upon the preliminary

objections of defendant, Northwestern National Insurance Group, to plaintiff's amended complaint, and after full consideration of the arguments and briefs of counsel, it is hereby ordered that said preliminary objections in the nature of a demurrer are sustained and the complaint dismissed.